IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JOSEPH ROBERT NEVILLE,                    1:14-CV-01654-BR

        Plaintiff,                        OPINION AND ORDER

v.

CAROLYN W. COLVIN, Acting
Commissioner, Social Security
Administration,

        Defendant.


DAVID G. HOSENPUD
MASAYUKI YAMAGUCHI
Lane Powell P.C.
601 S.W. Second Avenue, Suite 2100
Portland, OR 97204-3158
(503) 778-2121

        Attorneys for Plaintiff

Billy J. Williams
Acting United States Attorney
JANICE E. HEBERT
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1011

SARAH L. MARTIN
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, WA 98104-7075
(206) 615-3705

        Attorneys for Defendant


1 - OPINION AND ORDER

**BROWN, Judge.**

Plaintiff Joseph Robert Neville seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which she denied Plaintiff's applications for disability insurance benefits (DIB) under Title II and supplemental security income (SSI) under Title XVI of the Social Security Act.  This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

Following a review of the record, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Opinion and Order.

## ADMINISTRATIVE HISTORY

Plaintiff protectively filed his applications on March 24, 2009, and alleged a disability onset date of April 11, 2006.  Tr. 231-43.[1]  The applications were denied initially and on reconsideration.  An Administrative Law Judge (ALJ) held a hearing on July 19, 2011.  Tr. 38-57.  At the hearing Plaintiff was represented by an attorney.  Plaintiff and a vocational expert (VE) testified.

The ALJ issued a decision on August 2, 2011, in which he

---

[1]  Citations to the official transcript of record filed by the Commissioner on April 13, 2015, are referred to as "Tr."

found Plaintiff is not disabled.  Tr. 98-108.  The Appeals

Council granted Plaintiff's request for review and remanded this

matter for a second hearing.  An ALJ held a second hearing on

April 15, 2013, and issued a decision on May 8, 2013, in which

she found Plaintiff not disabled.  Tr. 58-90, 13-23.  That

decision became the final decision of the Commissioner on August

18, 2014, when the Appeals Council denied Plaintiff's request for

review.  Tr. 1-6.  *See Sims v. Apfel*, 530 U.S. 103, 106-07

(2000).

On October 17, 2014, Plaintiff filed a Complaint in this

Court seeking review of the Commissioner's decision.


## BACKGROUND

Plaintiff was born in December 1959 and was 46 years old on

his alleged onset date.  He completed the ninth grade and later

obtained a GED.  Tr. 41, 63.  Plaintiff has past relevant work

experience as a kitchen helper, short-order cook, hose-maker, and

courier.  Tr. 63-64.

Plaintiff alleges disability due to "bipolar, anxiety, PTSD,

nervous disorder, arthritis, heart condition, vision problems in

right eye, manic."  Tr. 281.


## STANDARDS

The initial burden of proof rests on the claimant to

establish disability. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).  To meet this burden a claimant must demonstrate his inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g).  *See also Brewes v. Comm'r of Soc. Sec. Admin.,* 682 F.3d 1157, 1161 (9th Cir. 2012).  Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)).  It is more than a mere scintilla [of evidence] but less than a preponderance. *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving

ambiguities.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir.
2009).  The court must weigh all of the evidence whether it
supports or detracts from the Commissioner's decision.  *Ryan v.
Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  Even
when the evidence is susceptible to more than one rational
interpretation, the court must uphold the Commissioner's findings
if they are supported by inferences reasonably drawn from the
record.  *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012).
The court may not substitute its judgment for that of the
Commissioner.  *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir.
2006).


## DISABILITY ANALYSIS

### Regulatory Sequential Evaluation

At Step One the claimant is not disabled if the Commissioner
determines the claimant is engaged in substantial gainful
activity.  20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).  *See
also Keyser v. Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir.
2011).

At Step Two the claimant is not disabled if the Commissioner
determines the claimant does not have any medically severe
impairments or combination of impairments.  20 C.F.R.
§§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  *See also Keyser*, 648
F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). *See also Keyser*, 648 F.3d at 724. The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, she must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations. 20 C.F.R. §§ 404.1520(e), 416.920(e). *See also* Social Security Ruling (SSR) 96-8p. "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule." SSR 96-8p, at *1. In other words, the Social Security Act does not require complete incapacity to be disabled. *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work he has done in the past. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, she must determine whether the claimant is able to do any other work that exists in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  *See also Keyser*, 648 F.3d at 724-25.  Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform.  *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).  The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2.  If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

## ALJ'S FINDINGS

At Step One the ALJ found Plaintiff has not engaged in substantial gainful activity (SGA) since his April 11, 2006, alleged onset date.  Tr. 15.  The ALJ found Plaintiff met the insured status requirements through March 31, 2012.

At Step Two the ALJ found Plaintiff has severe impairments including bipolar disorder; history of left-shoulder surgery; degenerative joint disease of the bilateral hips; degenerative joint disease of the bilateral knees; right-eye vision loss; and anxiety.  *Id.*

At Step Three the ALJ found Plaintiff's impairments do not meet or equal any listed impairment. Tr. 24. The ALJ found Plaintiff has the RFC for less than a full range of light work and is limited to frequent (as opposed to constant) overhead reaching with the left upper extremity. The claimant should avoid loud noises and hazards. He is limited to only frequently operating foot controls and has limited vision in the right eye. He is able to perform detailed instructions. Tr. 18.

At Step Four the ALJ found Plaintiff is unable to perform any past relevant work. Tr. 21.

At Step Five the ALJ found Plaintiff is able to perform the occupations of cashier, cleaner polisher, and fast-food worker. Tr. 22.

## DISCUSSION

Plaintiff contends the Commissioner erred by (1) improperly finding Plaintiff was not fully credible, (2) failing to find Chronic Obstructive Pulmonary Disease a severe impairment at Step Two, (3) improperly weighing medical evidence, and (4) posing an incomplete hypothetical question to the VE.

**I.   The ALJ did not err when she found Plaintiff's testimony was less than fully credible.**

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir.

8 - OPINION AND ORDER

1995).  *See also Vasquez v. Astrue,* 547 F.3d 1101, 1104 (9th Cir.

2008).  The ALJ's findings, however, must be supported by

specific, cogent reasons.  *Reddick v. Chater,* 157 F.3d 715, 722

(9th Cir. 1998).  *See also Holohan v. Massanari,* 246 F.3d 1195,

1202 (9th Cir. 2001).  Unless there is affirmative evidence that

shows the claimant is malingering, the Commissioner's reason

for rejecting the claimant's testimony must be "clear and

convincing."  *Id.*  The ALJ must identify the testimony that is

not credible and the evidence that undermines the claimant's

complaints.  *Id.*  The evidence upon which the ALJ relies must be

substantial.  *Id.* at 724.  *See also Holohan,* 246 F.3d at 1208.

General findings (*e.g.,* "record in general" indicates

improvement) are an insufficient basis to support an adverse

credibility determination.  *Reddick,* 157 F.3d at 722.  *See also

Holohan,* 246 F.3d at 1208.

When deciding whether to accept a claimant's subjective

symptom testimony "an ALJ must perform two stages of analysis:

the *Cotton* analysis and an analysis of the credibility of the

claimant's testimony regarding the severity of her symptoms."

*Smolen v. Chater,* 80 F.3d 1273, 1281 (9th Cir. 1996).

> Under the *Cotton* test, a claimant who alleges
> disability based on subjective symptoms "must
> produce objective medical evidence of an under-
> lying impairment which could reasonably be
> expected to produce the pain or other symptoms
> alleged."  *Bunnell,* 947 F.2d at 344 (quoting
> 42 U.S.C. § 423(d)(5)(A) (1988)); *Cotton,* 799

> F.2d at 1407-08.  The *Cotton* test imposes only
> two requirements on the claimant: (1) she must
> produce objective medical evidence of an
> impairment or impairments; and (2) she must
> show that the impairment or combination of
> impairments *could reasonably be expected to*
> (not that it did in fact) produce some degree
> of symptom.

*Smolen,* 80 F.3d at 1282.  *See also Carmickle v. Comm'r Soc. Sec. Admin.,* 533 F.3d 1155, 1160 (9th Cir. 2008).

If the claimant satisfies the above test and there is not affirmative evidence of malingering, the ALJ can reject the claimant's pain testimony only if she provides clear and convincing reasons for doing so.  *Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007)(citing *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1995)).  The ALJ's findings must be "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."  *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002).

**A.  Plaintiff's Testimony**

In his Adult Function Report dated May 28, 2009, Plaintiff reported he was homeless, living in shelters and on the street, and "couch surfing."  Tr. 299.  He reported during a normal day he walks around a lot and goes to the shelter to shower although he does not have clean clothes.  He visits with friends, watches television, helps his ex-wife shop, and does "things around her house."  *Id.*  Plaintiff reported he sleeps a lot because of his

medications.

Plaintiff stated he is no longer able to handle stress or to maintain focus, and he asserted he has severe memory loss. Tr. 300. He wakes several times in the night, has trouble going back to sleep, and is tired when he wakes.

Plaintiff stated his clothes are not clean, his hair is often dirty, and he has not shaved in "a long time." Id. He has some problems with his hands and very poor dentation. He needs help remembering when to eat, to shower, and to cut his nails. Tr. 301.

He eats foods like sandwiches and potato chips that do not have to be cooked although he usually goes to a shelter or to a friend's place to eat. He cannot remember how to cook some things, and his pace is very slow. He does not have any household chores or yard work. Plaintiff's hobbies are short walks and watching television. Tr. 303. He has a hard time concentrating and staying focused on what he is doing and difficulty reading and watching television. The places he regularly goes include shelters and churches, "but it is becoming increasingly hard to do these things." Id. It is also difficult to be around other people. Tr. 304.

Plaintiff said he could walk for six-to-eight blocks before needing to rest for 10 or 15 minutes. It is also difficult for him to stand for long periods of time, and he becomes short of

breath when climbing stairs.  He can pay attention for 25-45
minutes, "sometimes less."  *Id.*  He has trouble following spoken
instructions because he forgets easily.  He does not handle
stress or change well.  Tr. 305.  His mind "races so fast that
it's hard to do anything and at times I think that the world is
crashing around me."  Tr. 305.

Plaintiff completed a Pain & Fatigue Questionnaire on
May 28, 2009, in which he stated he had "aching" pain in his
shoulders, knees, elbows, ankles, hands, and back.  Tr. 307.  It
occurs often and can last for days; is caused by walking,
climbing, and sitting; and is relieved by lying down.

Plaintiff reported he has suffered from fatigue for 15
years, and it has increased over the past three years because of
medication that makes him tired.  He naps once a day for about
two hours and rests between activities.  For example, if he walks
to the store he rests before beginning to shop.  He can be active
for about two or three hours before requiring rest.

At the April 2013 hearing before the ALJ Plaintiff testified
he had worked as a courier, a builder of hydraulic hoses, a cook,
and a dishwasher.  Tr. 63.  He has not worked since November
2008 and was living in a shelter.  Plaintiff received treatment
at the Veteran's Hospital for arthritis, degenerative disk
disease, and Chronic Obstructive Pulmonary Disease (COPD).
Tr. 66.  He also received psychological treatment and

12 - OPINION AND ORDER

medications.   Plaintiff took acetaminophen, Benzotrate, Serzan,
Fluroside, Albuterol, and Tramadol on a regular basis, and the
medications were helpful.   Tr. 66-67.

Plaintiff spends his day walking "a little bit when I can,
but I try not to be around a lot of people."  Tr. 67.  He watches
television, but he does not read.  He also goes to church.  He
does not use a computer, he crochets as a hobby, and he smokes
cigarettes.  He does not drink alcohol, but he smokes marijuana
for pain once or twice a week.  Tr. 69.  He was last arrested in
Medford Oregon for harassment in 2005.

Plaintiff testified he cannot work because he cannot stand
or sit very long.  He has a problem using his hands, he can only
see with one eye, he has severe arthritis on his left side, and
he requires a cane to be able to stand up.  Tr. 70.

He also has arthritis in his hands and can use them only for
a short period before they become stiff and painful.  Tr. 71.  He
uses a prescribed cane when walking.  He cannot sit for long
without changing positions to relieve stress on his hip.  He can
lift less than ten pounds.

Plaintiff testified he can sit for about 45 minutes without
standing up.  Tr. 72.  He can stand for about 30 minutes before
his left knee and hip cause him to change positions.  Tr. 73.  He
cannot lift or carry more than ten pounds "because of the pain
that I get when I try to raise my left arm over my head."  *Id.*

13 - OPINION AND ORDER

He holds the cane with his right hand and leans on it to relieve
pain and stress on his left side.  He uses the cane when
standing.

Plaintiff had left-shoulder surgery in 1997 and cannot lift
his left arm over his head without severe pain nor hold his left
arm out without pain.  Tr. 77.  COPD causes him to become out of
breath after walking three or four blocks.  Tr. 77-78.  It is
difficult for him to climb stairs because of pain in his left
knee and hip, and he experiences shortness of breath.  Tr. 78.
He limps and drags his left leg when walking.  Tr. 80.

The ALJ found Plaintiff's statements as to the severity of
his impairments were less than fully credible.  Tr. 18-19.  The
ALJ found Plaintiff's assertions of disabling symptoms was not
fully credible based on the objective medical evidence, which,
according to the ALJ, failed to support Plaintiff's allegations
of disabling symptoms and limitations.  Tr. 19.  The ALJ cited
Plaintiff's "wide range of reported activities from his testimony
and function reports," the normal findings on objective
diagnostic imaging, the lack of corroboration relating to
Plaintiff's upper left extremity, and the reports of stable
mental-health symptoms.  Tr. 21.

Plaintiff contends the ALJ erred by failing to identify the
specific testimony that she found not credible and by failing to
identify the evidence that undermines the specific testimony by

Plaintiff.

### B.   The Relevant Objective Medical Evidence

As noted, the ALJ found Plaintiff's complaints were not supported by the objective medical evidence.  Tr. 19.  Although an ALJ may not rely solely on a lack of objective medical evidence to discredit a claimant, it is one factor that may be considered.  *Rollins v. Massanari,* 261 F.3d 853, 857 (9th Cir. 2001)(citing 20 C.F.R. § 404.1529(c)(2)).

The ALJ stated Plaintiff had a full range of motion in his joints with no swelling, no muscle weakness, full motor strength, no muscle atrophy, and a normal gait in examinations from July to October 2007 despite Plaintiff's claims of disabling hip and knee pain.  Tr. 19, 411, 536, 547.  The ALJ cited Plaintiff's September 2007 report that he walked about two miles daily and denied significant musculoskeletal problems.  Tr. 19, 415-16. The ALJ noted September 2007 normal imaging studies of the left hip and knee and December 2010 images showing minimal symmetric degenerative changes in the knees and hips.  Tr. 19, 397, 399, 637, 638.  The ALJ also noted the March 2011 MRI of the left knee with no evidence of a meniscal tear.  Tr. 19, 665.

Plaintiff argues the ALJ selectively chose medical records that minimize Plaintiff's limitations.  Plaintiff cites the September 2009 examination by Robin Rose, M.D., in which Dr. Rose found Plaintiff's "left lower extremity is externally rotated,

decreased lordosis and decreased arm swing . . . drags left leg slightly." Tr. 554. Dr. Rose noted Plaintiff's tandem gait was "imbalanced but attempts." *Id.* Plaintiff's knee bend was 75% of normal, lateral flexion of the back was painful to the right and normal on the left, range of motion in the hip joints was 95% of normal, there was pain in the knee joints with extension and flexion, and the left shoulder joint was painful anteriorly with flexion 120 degrees left and 140 degrees right. Tr. 555. Dr. Rose found cervical and lumbar paravertebral muscle spasm with palpable tenderness and crepitus. Tr. 556. Dr. Rose also found Plaintiff's knees crepitus, left shoulder stiff and painful to mobilize, and motor strength 5/5 in the lower extremities and 4/5 in the left upper extremity with weakness at the shoulder. *Id.* Dr. Rose diagnosed Plaintiff with generalized arthritis with lumbar disease and left-shoulder pain, undiagnosed heart condition symptomatic with syncope and chest pain, decreased vision on right, and bipolar disorder. Tr. 557. Dr. Rose concluded Plaintiff was able to walk and to stand for four hours in an eight-hour workday with breaks every 30 minutes for position change due to lumbar and leg pain. Dr. Rose found Plaintiff was able to sit for four hours in an eight-hour workday with breaks for position change every 45 minutes. Tr. 558. Plaintiff could lift or carry 20 pounds frequently and 40 pounds occasionally, but he could never lift his left arm above his

16 – OPINION AND ORDER

head.

In addition, Plaintiff cites the January 2013 examination by
Steven E. Gerson, D.O.  Tr. 781-86.  Dr. Gerson noted Plaintiff's
gait without his cane was with a moderate limp and abnormal
weight-bearing favoring the left leg.  Tr. 784.  Dr. Gerson
reported Plaintiff had moderate difficulty getting on and off the
examination table, and he declined to tandem walk, to walk on
toes, or to squat.  Tr. 785.  Dr. Gerson observed Plaintiff had
good range of motion in both arms without any obvious pain or
distress even when both arms were almost fully overhead.
Tr. 785.

Both Drs. Rose and Gerson found Plaintiff had mobility
issues with his left lower extremity.  They differ, however, on
whether Plaintiff's left upper extremity is as limited as he
claims.  On this conflicting record the ALJ's reliance on the
objective medical evidence to find Plaintiff less than fully
credible is one specific, clear, and convincing reason for
finding Plaintiff not fully credible.

### C.  Plaintiff's Activities of Daily Living

The ALJ found Plaintiff's complaints of disabling pain were
contradicted by the fact that Plaintiff worked for two years
after his alleged onset date of April 2006.  Tr. 18.  Plaintiff
argues he worked part-time as a laborer from April 2006 until
November 2007 and worked as a dishwasher from December 2007 to

17 - OPINION AND ORDER

April 2008.  The ability to work with allegedly disabling

impairments is a valid reason to discount the veracity of a

claimant's allegations of disability.    *Drouin v. Sullivan,* 966

F.2d 1255, 1258 (9th Cir. 1992).

The ALJ cited Plaintiff's ability to go to church, to engage

in social activities, and to crochet.  Tr. 18.  Contrary to his

April 2013 testimony that he could not stand for very long or

without a cane, Plaintiff reported in May 2009 that he spent "a

lot of time" walking around.  Tr. 18, 299.  The ALJ pointed out

that Plaintiff reporting walking "about two miles a day" in

September 2007.  Tr. 19, 443.

The ALJ properly found the contradiction between Plaintiff's

alleged limitations and his activities is a specific, clear, and

convincing reason to find Plaintiff less than fully credible.

### D.  Upper Left Extremity

The ALJ cited the lack of corroboration regarding

Plaintiff's allegation of left-shoulder limitations as a reason

to find Plaintiff less than fully credible.  Tr. 21.  The

evidence, however, conflicts on this issue.  Dr. Rose found left-

shoulder limitations, but Dr. Gerson observed behaviors

contradicting those limitations.  Tr. 77, 555, 785.  The lack of

corroboration regarding left shoulder limitations, therefore, is

a specific, clear, or convincing reason to find Plaintiff less

than fully credible.

**E.  Mental-Health Symptoms**

The ALJ found Plaintiff less than fully credible in part because Plaintiff's mental-health symptoms were well-controlled. Tr. 21.  Impairments that can be controlled effectively with treatment are not disabling for the purpose of determining eligibility for Social Security benefits.  *Warre v. Comm'r of Soc. Sec. Admin.,* 439 F.3d 1001, 1006 (9th Cir. 2006).  The treatment notes show Plaintiff's bipolar disorder was stable with medication treatment.  Tr. 20, 501, 528, 531, 533, 729, 740.

Plaintiff testified he was unable to work due to physical limitations.  Tr. 70.  The fact that Plaintiff's mental-health issues were well-controlled by medication is not a specific, clear, or convincing reason to find him less than fully credible.

When there is more than one reasonable interpretation of the evidence, however, the reviewing court should not substitute its judgment for that of the ALJ.  *Tackett v. Apfel,* 180 F.3d 1094, 1098 (9th Cir. 1999).  Here the ALJ articulated specific, clear, and convincing reasons for finding Plaintiff's symptom testimony less than fully credible.

In summary, on this record the Court finds the ALJ did not err when she concluded Plaintiff's testimony was not fully credible because she provided legally sufficient reasons supported by substantial evidence in the record for doing so.

## II.  **The ALJ erred when she evaluated Plaintiff's RFC.**

Plaintiff contends the ALJ erred at Step Two by failing to include chronic obstructive pulmonary disorder as a severe impairment.

At Step Two the ALJ determines whether the claimant has a medically-severe impairment or combination of impairments.  *Bowen v. Yuckert,* 482 U.S. 137, 140-41 (1987).  The Social Security Regulations and Rulings, as well as the case law that applies them, discuss the Step Two severity determination in terms of what is "not severe."  According to the regulations, "an impairment is not severe if it does not significantly limit [the claimant's ] physical ability to do basic work activities."   20 C.F.R. § 404.1521(a).  Basic work activities are "abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling."  20 C.F.R. § 404.1521(b).

The Step Two inquiry is a *de minimis* screening device to dispose of groundless claims.  *Yuckert,* 482 U.S. at 153-54.  An impairment or combination of impairments can be found "not severe" only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual's ability to work."  *See* SSR 85-28.  *See also Yuckert v. Bowen,* 841 F.2d 303, 306 (9th Cir 1988)(adopting SSR 85-28).  A physical or mental impairment must be established by medical evidence

20 - OPINION AND ORDER

consisting of signs, symptoms, and laboratory findings and cannot
be established on the basis of a claimant's symptoms alone.   20
C.F.R. § 404.1508.

The ALJ noted the COPD diagnosis and, citing a June 2007
examination, found the COPD did not cause more than minimal
functional limitations.   Tr. 16, 422.   Plaintiff, however,
contends the ALJ ignored more recent records documenting
increased symptoms and severity.   Plaintiff points to a July 2007
emergency-room record in which he presented with shortness of
breath.   Tr. 497.   In September and October 2007 Plaintiff also
complained of shortness of breath.   Tr. 443, 757.   Plaintiff
cites a February 2011 letter to Plaintiff from Melinda Spolski,
F.N.P.-C., that states pulmonary function tests indicate
Plaintiff has COPD, "which explains your symptoms of shortness of
breath," and she recommends a prescription inhaler.   Tr. 809.
Plaintiff also points to the November 2012 report of treating
physician Alex Min, M.D., who advised Plaintiff that a CT scan
revealed emphysema [a form of COPD] and dependent atelectasis
[gravity dependent partial lung collapse] in his lung.   Tr. 744.
Plaintiff cites a December 2012 form in which he lists Albuterol
as prescribed for COPD.   Tr. 386.   Plaintiff testified at the
April 2013 hearing that he "can't walk very far without having to
sit down and rest, because I'm a little out of breath" and that
he has trouble climbing stairs because he becomes short of

breath.  Tr. 77-78.

The record reflects objective medical evidence and pulmonary function testing that show Plaintiff becomes short of breath, which significantly limits his physical ability to perform basic work activities like walking.  *See* 20 C.F.R. 404.1521(a), (b).

The ALJ nevertheless found Plaintiff had the RFC to perform light work, which 20 C.F.R. § 404.1567(b) defines as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

On this record the Court finds there is evidence that Plaintiff has shortness of breath with any exertion, including walking.  Thus, the ALJ's failure to include COPD as a severe impairment at Step Two was not harmless error because the ALJ did not include Plaintiff's limitations arising from COPD when evaluating Plaintiff's RFC.

In summary, the Court concludes on this record that the ALJ erred when she evaluated Plaintiff's RFC by failing to include

Plaintiff's physical limitations arising from COPD.

### III. The Medical Evidence

Disability opinions are reserved for the Commissioner.  20 C.F.R. §§ 404.1527(e)(1); 416.927(e)(1).  If a conflict does not arise between medical-source opinions, the ALJ generally must accord greater weight to the opinion of a treating physician than that of an examining physician.  *Lester*, 81 F.3d at 830.  More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and observe the patient as an individual.  *Orn v. Astrue,* 495 F.3d 625, 632 (9th Cir. 2007).  In such circumstances the ALJ should also give greater weight to the opinion of an examining physician over that of a reviewing physician.  *Id.*  If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons.  *Id.* (Treating physician); *Widmark v. Barnhart,* 454 F.3d 1063, 1067 (9th Cir. 2006)(examining physician).  Even if one physician is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record.  *Orn,*  495 F.3d at 632; *Widmark,* 454 F.3d at 1066.  The opinion of a nonexamining physician by itself is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician.  *Widmark,* 454 F.3d at 1066 n. 2.  The ALJ may reject

23 - OPINION AND ORDER

physician opinions that are "brief, conclusory, and inadequately
supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d
1211, 1216 (9th Cir. 2005).

### A.  Dr. Rose

As noted, Dr. Rose examined Plaintiff on September 22, 2009.
Tr. 549-59.  Dr. Rose diagnosed Plaintiff with generalized
arthritis with lumbar disease and left-shoulder pain as well as
undiagnosed heart condition with syncope and chest pain,
decreased vision in the right eye, and bipolar disorder.
Tr. 557.  Dr. Rose opined Plaintiff was able to walk or to stand
for up to four hours in an eight-hour workday with breaks for
position changes every 30 minutes and was able to sit for four
hours with breaks every 45 minutes for position change.  Tr. 558.
Dr. Rose found Plaintiff could lift 20 pounds frequently and 40
pounds occasionally, but Plaintiff was unable to reach above his
head with his left arm, was never able to crawl, rarely able
to kneel, and occasionally able to stoop, crouch, or climb.
Dr. Rose found Plaintiff was limited to never reaching, pushing,
or pulling with the upper left extremity with manipulative
limitations due to left-shoulder pain and his weakened grip in
his left hand.  Dr. Rose concluded Plaintiff should avoid extreme
cold and heat, wetness, humidity, vibrations, pulmonary
irritants, and hazards and noise.  Dr. Rose also concluded
Plaintiff's bipolar disorder created communication limitations

that would interfere with working with others and following
employer requests.

The ALJ gave "partial weight" to Dr. Rose's opinion that
Plaintiff should avoid hazards and noise.  Tr. 19.  The ALJ found
Plaintiff more limited in lifting and carrying than Dr. Rose
determined.

The ALJ gave "little weight" to Dr. Rose's remaining
limitations "because they are excessive in light of the
claimant's wide range of reported activities, including his
ability to continue working for two years after the onset date
and walk up to two miles per day."  *Id.*  The limitations assessed
by Dr. Rose, however, do not preclude the possibility of
Plaintiff working part-time or walking up to two miles in a day.

The Commissioner also contends Dr. Rose's opinion is
contradicted by the October 26, 2009, report of state agency
reviewing physician Neal Bern, M.D.  Tr. 582-89.  Dr. Bern
examined records, included Dr Rose's report, and opined Plaintiff
could perform a limited range of light work with occasional
overhead reaching on the left and only occasional hand or foot
controls with the left upper and lower extremities.

The ALJ noted Dr. Bern's opinion and accorded it partial
weight, accepting his assessment that Plaintiff was limited to
light-exertion work and had limited right-eye vision.  Tr. 20.
The ALJ, however, rejected the remainder of Dr. Bern's opinion as

25 - OPINION AND ORDER

inconsistent with the objective medical evidence.

On this record the Court concludes the ALJ erred when she partially rejected Dr. Rose's opinion because the ALJ did not provide specific and legitimate reasons supported by substantial evidence in the record for doing so.

**B. Dr. Gerson**

Dr. Gerson examined Plaintiff on January 9, 2013. Tr. 781-87. Dr. Gerson found Plaintiff had full bilateral motor strength. He observed Plaintiff's gait "without the cane is with a moderate limp, weight bearing is abnormal with the claimant favoring the left leg, and the posture is normal. . . . There is a mild lumbering gait, negative swaying and negative instability of the gait." Tr. 784. He opined Plaintiff was able to stand or to walk for four hours in an eight-hour workday, and was unable to climb a few steps at a reasonable pace with the use of a hand rail or to walk a block at a reasonable pace on rough or uneven surface. Tr. 794.

The ALJ cited Dr. Gerson's report, found his lifting restrictions were insufficient, and rejected his limiting Plaintiff to standing and to walking for four hours per day and limiting Plaintiff's frequent use of his right hand "because [those limitations] are unsupported by the clinical exam findings, including the full bilateral lower extremity motor strength and negative instability of gait exhibited by the

26 - OPINION AND ORDER

claimant."  Tr. 20.

Both of the examining physicians found Plaintiff was able to
stand or to walk for four hours in an eight-hour workday, and
both examining physicians found Plaintiff had full bilateral
lower-extremity motor strength.  The ALJ's assertion that
Plaintiff's lower-extremity motor strength contradicts the
medical assessment of the length of time that Plaintiff can stand
or walk is erroneous..

Accordingly, on this record the Court concludes the ALJ
erred when she rejected Dr. Gerson's opinion regarding
Plaintiff's limitations because she did not provide legally
sufficient reasons supported by substantial evidence in the
record for doing so.


### REMAND

The decision whether to remand for further proceedings or
for immediate payment of benefits generally turns on the likely
utility of further proceedings.  *Harman v. Apfel*, 211 F.3d 1172,
1179 (9th Cir. 2000).  When "the record has been fully developed
and further administrative proceedings would serve no useful
purpose, the district court should remand for an immediate award
of benefits."  *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir.
2004).

The decision whether to remand this case for further

27 - OPINION AND ORDER

proceedings or for the payment of benefits is a decision within the discretion of the court. *Harman*, 211 F.3d 1178.

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed." *Harman*, 211 F.3d at 1178. The Court should grant an immediate award of benefits when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting . . . evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Id.* The second and third prongs of the test often merge into a single question: Whether the ALJ would have to award benefits if the case were remanded for further proceedings. *Id.* at 1178 n.2.

The Court has determined the ALJ erred when she failed to include limitations arising from COPD in Plaintiff's RFC. In addition, the Court has concluded the ALJ erred when she rejected the opinions of Drs. Rose and Gerson because the ALJ did not provide legally sufficient reasons supported by substantial evidence in the record. The Court, therefore, concludes this matter must be remanded.

Accordingly, the Court remands this matter for further administrative proceedings consistent with this Opinion and Order specifically to allow the ALJ to determine Plaintiff's limitations arising from his COPD and to evaluate properly the

28 - OPINION AND ORDER

opinions of the examining physicians.

## CONCLUSION

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four, 42 U.S.C. § 405(g), for further administrative proceedings consistent with this Opinion and Order.

IT IS SO ORDERED.

DATED this 30th day of November, 2015.

_____

ANNA J. BROWN
United States District Judge

29 - OPINION AND ORDER